1
2
3
4
5
6
7
8
9
10
11
12
13

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JEREMIAH LANCE WINCHESTER,

                          Petitioner,

        v.

MIKE OBENLAND,

                          Respondent.

Case No. C17-1136-RSL-MLP

REPORT AND RECOMMENDATION

## I.    INTRODUCTION

Petitioner, a state prisoner who is currently confined at the Monroe Correctional Complex, seeks relief under 28 U.S.C. § 2254 from a 2012 Whatcom County Superior Court judgment and sentence. Respondent has filed an answer to Petitioner's habeas petition and submitted relevant portions of the state court record. Petitioner, who is represented by appointed counsel, has filed a response to Respondent's answer.

Having considered the parties' submissions, the balance of the record, and the governing law, the Court recommends that Petitioner's habeas petition be DENIED, that this action be DISMISSED with prejudice, and that a certificate of appealability be GRANTED in part and DENIED in part.

REPORT AND RECOMMENDATION - 1

1

## II.    RELEVANT FACTUAL AND PROCEDURAL HISTORY

2      The Washington State Court of Appeals ("Court of Appeals"), on direct appeal,

3  summarized the facts relevant to Petitioner's conviction as follows:

4      On November 22, 2011, Jeremiah Winchester, his son, Jesse[1] Winchester, Gavin
       Glyzinski, and Johnny Arellano went to the home of Melinda Wilson and Rob
5      Lara. Winchester asked Lara if he knew someone who could get Winchester
       $1,800 worth of heroin. Lara knew someone called "Chuko," whose real name
6      was Salvador Rodriguez. Winchester asked Lara to call Chuko. Lara did. Chuko
       said he could supply the heroin and would be there in about an hour. Winchester
7      said that he planned to take Chuko's guns and money.

8      Chuko arrived with his brother, Oscar Rodriguez (nicknamed "Scrappy"), and a
       man named Andrew Medina. Chuko carried a black backpack. Lara led Chuko,
9      Scrappy, and Medina upstairs, where the other men and Wilson were.

10     Things escalated quickly. One of the men in Chuko's group pulled out a gun.
       Winchester picked up a gun that lay at his feet. He grabbed one of the men by the
11     shoulder and asked, "Where are you going?" The man turned around and shot
       Winchester in the face.

12
       More shots were fired. Chuko, Scrappy, and Medina fled. Lara found Jesse at the
13     bottom of the stairs, clutching his chest. Wilson called 911. Jesse ultimately died.
       Lara also found a bag on the stairs, which was not there before Chuko arrived.
14     The bag contained heroin and methamphetamine.

15     Winchester was taken to the hospital. The bullet had entered his cheek and
       shattered everything back to his neck. It remained lodged near his spine. Detective
16     Lee Beld visited Winchester in the hospital three times and spoke with him about
       the incident. The two latter interviews were tape recorded.

17
       Winchester was charged with attempted possession of a controlled substance
18     (heroin), count I; attempted possession of a controlled substance
       (methamphetamine), count II; attempted first degree robbery, count III; and
19     second degree unlawful possession of a firearm, count IV.[2] The jury found
       Winchester guilty of counts I, III, and IV, with a special firearm verdict on counts
20     I and III.

21  (Dkt. # 32-1 at 16-18.)

22
   _____

23  [1] [Court of Appeals footnote 1] We use some first names and nicknames for clarity. No disrespect is intended.

    [2] [Court of Appeals footnote 2] The State charged and tried Arellano as a codefendant. Glyzinski was initially
    charged as a codefendant, but made a plea deal with the State. Lara and Wilson were not charged at the time of trial.

Petitioner filed a direct appeal. (*See* Dkt. # 32-1 at 44-135.) As his first assignment of error, he asserted that the trial court violated his "right to counsel under the Sixth Amendment of the United States Constitution by denying his motion to substitute counsel." (*Id.* at 57.) Petitioner argued that the trial court failed to conduct an adequate inquiry into the nature and extent of the conflict and breakdown in communication between him and his counsel. (*Id.* at 81.) Petitioner cited the three-part test for substitution of new court-appointed counsel, which requires consideration of "(1) the adequacy of the trial court's inquiry; (2) the timeliness of the motion; and (3) the extent of the conflict." (*Id.* at 86 (quoting *In re Pers. Restraint of Stenson*, 142 Wash. 2d 710, 724 (2001) (adopting test set forth in *United States v. Moore*, 159 F.3d 1154, 1158-59 (9th Cir. 1998)).) The Court of Appeals rejected this claim, concluding that the trial court did not abuse its discretion in denying his request for new counsel because he failed to show a conflict of interest or a complete breakdown in attorney-client communications. (*See id.* at 18-23 (applying three-part test for substitution of new court-appointed counsel)).) Petitioner did not seek discretionary review in the Washington Supreme Court. (*See* Dkt. # 32-2 at 116-17.)

While his direct appeal was pending, Petitioner filed a personal restraint petition ("PRP") in state court. (*Id.* at 2-102.) He stated his first ground for relief as: "Newly discovered evidence clarifies the first argument raised on direct appeal 'THE COURT ERRED IN DENYING WINCHESTER'S REQUEST FOR NEW COUNSEL IN THE ABSENCE OF ADEQUATE INQUIRY.' The state[']s reply is completely off point." (*Id.* at 14.) Petitioner argued that his request for new counsel "was unequivocally for substitution of appointed counsel with retained counsel of choice." (*Id.* at 15.) Citing *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006), Petitioner asserted that he had a Sixth Amendment right to retain counsel of his choice. (Dkt. # 32-2 at 16.) Petitioner also submitted new evidence, including a jail kite addressed to the trial

judge stating his desire to hire retained counsel and declarations from family members and friends attesting to their efforts to secure private counsel for him. (*See id.* at 149-50, 155, 164, 180, 189, 194-95, 216-18, 223, 225-30, 235.) As his fifth ground for relief, Petitioner argued that the detective assisting the prosecutor violated his attorney-client privilege. (*Id.* at 30-33.)

The Court of Appeals stayed the PRP while the direct appeal was pending and denied Petitioner's request to consolidate the two cases. (Dkt. # 32-3 at 11, 82, 113.) Ultimately, the court dismissed the PRP. (*Id.* at 121-33.) The court declined to consider the merits of Petitioner's right to counsel of choice claim, stating that the claim had been rejected on its merits on direct appeal. (*Id.* at 122.) The court also declined to consider the extraneous evidence showing Petitioner's intent and efforts to obtain private counsel, stating that it did not qualify as newly discovered evidence. (*Id.* at 123.) The court further rejected his attorney-client privilege claim, concluding that the record did not support his "assertion of confidentiality or demonstrate an interference with the attorney-client relationship." (*Id.* at 126.)

Petitioner filed a motion for discretionary review in the Washington Supreme Court. (*Id.* at 135-61.) He raised the following issues:

> 1.    Whether the government invaded the attorney-client privilege in violation of the Sixth Amendment, and whether trial counsel was ineffective for failing to move to dismiss on this ground?
>
> 2.    Whether the procedural bar to relitigation is inapplicable where the Court of Appeals prevents an appeal and personal restraint petition from being decided concurrently, and if so, whether Winchester's right to counsel of choice under the Sixth Amendment was violated?

(*Id.* at 142; *see also id.* at 136-61.) The Washington Supreme Court denied review without comment. (Dkt. # 32-4 at 2.)

## III.    GROUNDS FOR RELIEF

Petitioner identifies the following grounds for habeas relief:

REPORT AND RECOMMENDATION - 4

1        1.     "Constitutional violations occurred when the State intentionally violated the attorney-client and work product privileges." (Dkt. # 9 at 5.)

        2.     "Violation of my Constitutional right to RETAIN the counsel of my choice at my expense and to communicate with retained counsel." (*Id.* at 8.)

        3.     "Ineffective assistance of counsel. Failure to investigate. Failure to file for extension, failure to move to replace appointed with retained counsel." (*Id.* at 12.)

        4.     "Recantation showing the state[']s use of perjured testimony and government misconduct interfering with and threatening a witness." (*Id.* at 15.)

## IV.    DISCUSSION

### A.    Exhaustion

Before seeking federal habeas relief, a state prisoner must exhaust the remedies available in the state courts. The exhaustion requirement reflects a policy of federal-state comity, intended to afford the state courts "an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation and citation marks omitted).

There are two avenues by which a petitioner may satisfy the exhaustion requirement. First, a petitioner may properly exhaust his state remedies by "fairly presenting" his claim in each appropriate state court, including the state supreme court with powers of discretionary review, thereby giving those courts the opportunity to act on his claim. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995). "It has to be clear from the petition filed at each level in the state court system that the petitioner is claiming the violation of the federal constitution that the petitioner subsequently claims in the federal habeas petition." *Galvan v. Alaska Dep't of Corrections*, 397 F.3d 1198, 1204 (9th Cir. 2005).

1    Second, a petitioner may technically exhaust his state remedies by demonstrating that his

2   "claims are now procedurally barred under [state] law." *Gray v. Netherland*, 518 U.S. 152, 162-

3   63 (1996) (quoting *Castille v. Peoples*, 489 U.S. 436, 351 (1989)); *see also Smith v. Baldwin*,

4   510 F.3d 1127, 1139 (9th Cir. 2007) (en banc). If the petitioner is procedurally barred from

5   presenting his federal claims to the appropriate state court at the time of filing his federal habeas

6   petition, the claims are deemed to be procedurally defaulted for purposes of federal habeas

7   review. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). A habeas petitioner who has defaulted

8   his federal claims in state court meets the technical requirements for exhaustion because "there

9   are no state remedies any longer 'available' to him." *Coleman v. Thompson*, 501 U.S. 722, 732

10  (2007). Federal habeas review of procedurally defaulted claims is barred unless the petitioner can

11  either demonstrate cause for the default and actual prejudice as a result of the alleged violation of

12  federal law, or demonstrate that failure to consider the claims will result in a fundamental

13  miscarriage of justice. *Id.* at 724.

14   Respondent concedes that Petitioner properly exhausted Ground 1 but contends that

15  Grounds 2, 3, and 4, are technically exhausted and procedurally defaulted. (Dkt. # 31 at 5, 20-

16  26.) Petitioner responds that he properly exhausted Ground 2, but he does not dispute

17  Respondent's assertions regarding Grounds 3 and 4. (Dkt. # 33 at 3-7.) As discussed below, the

18  Court concludes that Petitioner properly exhausted Ground 2 but technically exhausted and

19  procedurally defaulted Grounds 3 and 4.

20       *1.    Proper Exhaustion of Ground 2*

21   Respondent argues that Petitioner failed to properly exhaust Ground 2 because he raised

22  it on direct appeal but failed to seek discretionary review by the Washington Supreme Court.

23  (Dkt. # 31 at 21.) Respondent further contends that Petitioner did not properly exhaust Ground 2

1    by raising it in his PRP because the Court of Appeals refused to consider the merits of the claim

2    given that he had already raised the issue on direct appeal. (*Id.* at 22.)

3    The Court, however, agrees with Petitioner that he did not raise Ground 2 on direct

4    appeal. Rather, he raised distinct constitutional claims on direct appeal and in his PRP. "The

5    Sixth Amendment's right to counsel encompasses two distinct rights: the right to adequate

6    representation and a right to choose one's own counsel." *United States v. Rivera-Corona*, 618

7    F.3d 976, 979 (9th Cir. 2010). On direct appeal, both Petitioner and the Court of Appeals

8    analyzed his claim under the three-part test that applies to defendants seeking to vindicate their

9    right to adequate representation by requesting new court-appoint counsel. But motions to replace

10   appointed counsel with retained counsel "have never been governed" by this analysis. *Id.* Thus,

11   the Court of Appeals on direct appeal did not consider the claim that Petitioner raised in his

12   PRP—that the trial court violated his right to *retained* counsel of his choice. Because Petitioner

13   also presented this claim to the Washington Supreme Court (dkt. # 32-3 at 142), he properly

14   exhausted it.

15   Furthermore, contrary to Respondent's argument, this Court is not barred from

16   considering the merits of Ground 2 because the Court of Appeals dismissed his PRP as

17   duplicative of his direct appeal. "Washington's relitigation rule does not serve as a bar to habeas

18   review." *Pirtle v. Morgan*, 313 F.3d 1160, 1168 (9th Cir. 2002) (citing *Ylst v. Nunnemaker*, 501

19   U.S. 797, 805 (1991) (explaining that "a state's reliance on the relitigation rule does not amount

20   to a ruling on the merits or a denial on procedural grounds, and therefore does not bar federal

21   review")); *see also Cone v. Bell*, 556 U.S. 449, 466 (2009) ("When a state court declines to

22   review the merits of a petitioner's claim on the ground that it has done so already, it creates no

23   bar to federal habeas review."). Although Respondent attempts to distinguish *Cone* and *Pirtle*

(dkt. # 31 at 23), those cases are analogous to this case because in all three, the state courts determined that the merits of the petitioners' claims had been previously reviewed when, in fact, they had not. The Court may properly consider the merits of Ground 2.

### 2.    Technical Exhaustion

As discussed above, Petitioner does not contend that he properly exhausted Grounds 3 and 4. As Respondent maintains, these claims are technically exhausted because if Petitioner attempted to raise them in a second PRP, the state courts would find them barred by Washington law. Under RCW 10.73.090(1), a petition for collateral attack on a judgment and sentence in a criminal case must be filed within one year after the judgment becomes final, subject to exceptions that do not apply here. *See* RCW 10.73.100. A judgment becomes final for purposes of state collateral review on the date that the appellate court issues its mandate disposing of a timely direct appeal. RCW 10.73.090(3)(b). Here, the state court issued its mandate on November 7, 2014, well over one year ago. (*See* Dkt. # 32-3 at 119.) It therefore appears clear that Petitioner would now be time barred from returning to the state courts to present his unexhausted claims. *See* RCW 10.73.090. Moreover, because Petitioner has previously filed a PRP, the state courts are unlikely to entertain another such petition. *See* RCW 10.73.140 (successive petition bar). Accordingly, the Court concludes that Petitioner has technically exhausted, and procedurally defaulted, Grounds 3 and 4.

### 3.    Cause and Prejudice

Federal habeas review of Petitioner's procedurally defaulted claims is barred unless he can demonstrate cause and prejudice, or a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. To satisfy the "cause" prong of the cause and prejudice standard, Petitioner must show that some objective factor external to the defense prevented him from complying with the state's

procedural rule. *Id.* at 753; *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (a petitioner can demonstrate "cause" if he shows constitutionally ineffective assistance of counsel, the unavailability of a factual or legal basis for a claim, or some interference by officials). To show "prejudice," Petitioner "must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphases in original). And, only in a "truly extraordinary case," the Court may grant habeas relief without a showing of cause or prejudice to correct a "fundamental miscarriage of justice" where a constitutional violation has resulted in the conviction of a defendant who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 338 (1995).

Petitioner fails to demonstrate that any factor external to the defense prevented him from complying with the state's procedural rules and, thus, he has not demonstrated cause for his procedural default. Because Petitioner has not met his burden of demonstrating cause for his procedural default, the Court need not determine whether there was any actual prejudice. *See Cavanaugh v. Kincheloe*, 877 F.2d 1443, 1448 (9th Cir. 1989) (citing *Smith v. Murray*, 477 U.S. 527, 533 (1986)). In addition, Petitioner makes no colorable showing of actual innocence. Petitioner thus fails to demonstrate that his procedurally defaulted claims are eligible for federal habeas review. Therefore, Grounds 3 and 4 should be DENIED.

**B.    Merits Review**

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if (1) the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or (2) the decision was based on an

1    unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

2    In considering claims pursuant to § 2254(d), the Court is limited to the record before the state

3    court that adjudicated the claim on the merits, and the petitioner carries the burden of proof.

4    *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011); *see also Gulbrandson v. Ryan*, 738 F.3d 976,

5    993 (9th Cir. 2013). "When more than one state court has adjudicated a claim, [the Court

6    analyzes] the last reasoned decision." *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005)

7    (citing *Ylst*, 501 U.S. at 803-04).

8         Under § 2254(d)(1)'s "contrary to" clause, a federal court may grant the habeas petition

9    only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a

10   question of law, or if the state court decides a case differently than the Supreme Court has on a

11   set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

12   Under the "unreasonable application" clause, a federal habeas court may grant the writ only if

13   the state court identifies the correct governing legal principle from the Supreme Court's

14   decisions, but unreasonably applies that principle to the facts of the prisoner's case. *See id*. at

15   407-09.

16        Clearly established federal law, for purposes of AEDPA, means "the governing legal

17   principle or principles set forth by the Supreme Court at the time the state court render[ed] its

18   decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). "If no Supreme Court precedent

19   creates clearly established federal law relating to the legal issue the habeas petitioner raised in

20   state court, the state court's decision cannot be contrary to or an unreasonable application of

21   clearly established federal law." *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) (citing *Dows*

22   *v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)).

23

With respect to § 2254(d)(2), a petitioner may only obtain relief by showing that the state court's conclusion was based on "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. § 2254(d)(2)). The Court presumes the state court's factual findings to be sound unless the petitioner rebuts "the presumption of correctness by clear and convincing evidence." *Id.* (quoting 28 U.S.C. § 2254(e)(1)).

With these standards in mind, the Court turns to Petitioner's remaining claims.

### 1.    *Ground 1 – Violation of Attorney-Client and Work Product Privileges*

Petitioner asserts that the State intentionally violated the attorney-client and work product privileges by seizing documents covered by the two privileges. Respondent argues that whether the privileges cover a document is a matter of state law, and no Supreme Court decision holds that an intrusion into the privileges violates the Constitution. (Dkt. # 31 at 10.) Petitioner does not argue otherwise. (*See generally* Dkt. # 33.) Because Ground 1 is not based upon clearly established federal law as required by § 2254(d), it should be DENIED. *See Brewer*, 378 F.3d at 955.

### 2.    *Ground 2 – Violation of Right to Retain Counsel of Choice*

Petitioner contends that the trial court violated his Sixth Amendment right to retain counsel of his choice. Because, as discussed above, the state courts did not address the merits of this claim, the Court reviews purely legal issues and mixed questions of law and fact de novo. *See Pirtle*, 313 F.3d at 1167. "Nonetheless, under AEDPA, factual determinations by the state court are presumed correct and can be rebutted only by clear and convincing evidence." *Id.* at 1168.

REPORT AND RECOMMENDATION - 11

1    The Sixth Amendment right to counsel includes a qualified right of the criminal

2 defendant to hire counsel of his choice. *Gonzalez-Lopez*, 548 U.S. at 144; *Wheat v. United*

3 *States*, 486 U.S. 153, 159, 164 (1988). The erroneous deprivation of this right is a structural error

4 that does not require an additional showing of prejudice. *Gonzalez-Lopez*, 548 U.S. at 148-50

5 ("Deprivation of the right is 'complete' when the defendant is erroneously prevented from being

6 represented by the lawyer he wants, regardless of the quality of the representation he received.").

7    The right to counsel of choice is circumscribed in several respects. *Id.* at 144, 151-52.

8 Relevant to this case, trial courts enjoy "wide latitude in balancing the right to counsel of choice

9 against the needs of fairness . . . , and against the demands of its calendar . . . ." *Id.* at 152 (citing

10 *Wheat*, 486 U.S. at 163-64, and *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983)). Trial courts thus

11 retain the discretion to "make scheduling and other decisions that effectively exclude a

12 defendant's first choice of counsel." *Miller v. Blackletter*, 525 F.3d 890, 895 (9th Cir. 2008).

13 "[O]nly an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable

14 request for delay' violates the right to the assistance of counsel." *Morris*, 461 U.S. at 11-12

15 (quoted source omitted); *see also United States v. Walters*, 309 F.3d 589, 592 (9th Cir. 2002) ("A

16 criminal defendant's exercise of [his qualified] right [of choice of counsel] cannot unduly hinder

17 the fair, efficient and orderly administration of justice." (citation omitted)).

18    Here, Petitioner made his preliminary appearance on January 23, 2012. (Dkt. # 33-1 at 1.)

19 On or about March 20, 2012, he put into the prison mailbox a kite addressed to the trial judge

20 stating that he wanted to replace appointed counsel with retained counsel. (Dkt. # 32-2 at 218.)

21 For an unknown reason, the trial judge never received the kite, which was redirected to

22 Petitioner's appointed counsel, who never gave it to the judge.[3] (*Id.* at 123.) On April 2, 2012,

23

---

[3] As discussed above, Petitioner failed to properly exhaust Ground 3, which alleged that appointed counsel was ineffective for failing to move to substitute retained counsel.

REPORT AND RECOMMENDATION - 12

the trial court held an evidentiary hearing on the parties' pretrial motions. (*Id.*; Dkt. # 32-5 at 179-249.) During the hearing, Petitioner expressed concern regarding his access to the discovery and the limited time he had spent with his attorney, among other things, but he did not ask for new counsel or inquire whether the trial court had received his kite. (*See* Dkt. # 32-5 at 246-49.) The trial court stated that Petitioner had sufficient time to meet with his attorney before testimony began on April 8, 2012, and that if Petitioner needed to file a motion or request for a continuance, his counsel knew how to properly bring it before the court. (*Id.* at 248-49.)

On April 3, 2012—the day voir dire commenced—Petitioner for the first time asked for "a new counsel." (*Id.* at 250.) The following exchange then occurred:

THE COURT: It's too late for that. We're ready to go to trial. We have a jury panel --

MR. WINCHESTER: It's too late for that?

THE COURT: -- waiting outside. Yes, it's too late for a new counsel. You have time to work with him. We're not going to take testimony until next week. Once we get a jury seated, then you've got all the time between then and the beginning of next week, and during the course of trial, you will be --

MR. WINCHESTER: You --

THE COURT: -- able to talk to each other.

MR. WINCHESTER: You understand I've seen my lawyer three times? One time had to do with those, one time when he told me about a plea agreement --

THE COURT: If there's going to be a -- if there is going to be a motion to change counsel, I need to have a formal motion. You have to serve the State, and they have to have a chance to respond to that, and at this point in time, it's very unlikely that you're going to get another attorney, because as I understand Mr. Brodsky -- well, let me ask, are you retained, Mr. Brodsky?

MR. BRODSKY: No.

THE COURT: So you know, you can start all over again with somebody new, and at this point in time, Mr. Brodsky has told me he's ready to go. Everybody else is

ready to go. We're -- you know, there's been plenty of time for the preparation to be done, for you to talk to him and –

[Additional discussion regarding why Petitioner was dissatisfied with his appointed counsel.]

MR. WINCHESTER: I just want to make sure that the Court knows that I do not feel comfortable. I don't feel that I've been represented. I talked to the investigator once and talked to my lawyer three times.

THE COURT: I know. Mr. Brodsky, do you feel that you have properly prepared and are ready to go forward?

MR. BRODSKY: I am.

THE COURT: We're going to go forward at this time.

(*Id.* at 250-53.) Petitioner never renewed his request for new counsel.

Respondent argues that Petitioner cannot prevail on his choice of counsel claim because he never told the judge that he wanted retained counsel. (Dkt. # 31 at 19.) Petitioner responds that it was the trial judge's responsibility to inquire into whether Petitioner wanted to replace his appointed counsel with retained counsel and whether he was financially able to obtain private counsel. (Dkt. # 33 at 8-9 (citing *Bradley v. Henry*, 510 F.3d 1093, 1098 (9th Cir. 2007) (en banc), and *United States v. Torres-Rodriguez*, 930 F.2d 1375, 1381 (9th Cir. 1991), *abrogated on other grounds by Bailey v. United States*, 516 U.S. 137 (1995)).) According to Petitioner, the trial court never gave him an opportunity to establish that he or his family had contacted and could afford private counsel, and never meaningfully explored whether a substitution would cause undue delay. (*Id.*)

The Court concludes that the trial court did not violate Petitioner's qualified right to counsel of choice. The first time the trial judge heard about Petitioner's desire for new counsel was directly before voir dire. (*See* Dkt. # 32-5 at 273.) Because the trial was scheduled to last approximately two weeks, the court had arranged for a large panel of prospective jurors. (*See*

REPORT AND RECOMMENDATION - 14

1   Dkt. 32-5 at 240, 243.) The evidence does not establish that Petitioner had already retained

2   private counsel, only that he had attorneys who were interested in representing him. (*See* Dkt. #

3   32-2 at 155, 164, 180, 189, 194-95.) But even assuming Petitioner had retained counsel, such

4   counsel was not present during the pretrial hearing, and thus the court would have had to delay

5   voir dire and very likely the start of trial if it granted Petitioner's request. *See Miller*, 525 F.3d at

6   896 (fact that the petitioner had not yet retained counsel and requested a continuance to do so

7   supported trial court's denial of request to substitute counsel). The trial judge's decision to deny

8   his request for new counsel on the eve of trial was not the type of "unreasoning and arbitrary

9   insistence upon expeditiousness in the face of a justifiable request for delay" that violates the

10  Sixth Amendment. *Morris*, 461 U.S. at 11-12 (internal quotation omitted) ("Trial judges

11  necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is

12  that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this

13  burden counsels against continuances except for compelling reasons."); *see also Wheat*, 486 U.S.

14  at 157, 164 (holding that a motion for substitution of counsel made two days before trial was

15  "made so close to the time of trial" that the trial court properly "relied on instinct and judgment

16  based on experience" in denying the motion and did not exceed "the broad latitude which must

17  be accorded it in making this decision"); *Houston v. Schomig*, 533 F.3d 1076, 1079-80 (9th Cir.

18  2008) (finding that the trial court did not abuse its discretion in denying a motion to substitute

19  counsel made just four days before trial).

20          Moreover, the trial judge reasonably concluded that Petitioner's appointed counsel was

21  sufficiently prepared for trial. The trial judge "had a duty to inquire into the problems" between

22  Petitioner and his appointed counsel, *Miller*, 525 F.3d at 896, and he gave Petitioner an

23  opportunity to express his concerns both during the pretrial hearing on April 2, 2012, and during

REPORT AND RECOMMENDATION - 15

1    the hearing on April 3, 2012. (*See* Dkt. # 32-5 at 246-49, 250-55.) As the Court of Appeals found

2    on direct review, "[Petitioner] did not allege a complete communication breakdown or an

3    irreconcilable conflict." (Dkt. # 32-1 at 23.) The trial court also asked Petitioner's appointed

4    counsel whether he was prepared to go to trial, and counsel responded that he was. (*Id.* at 251,

5    253.) The prosecutor added that Petitioner's counsel had diligently participated in witness

6    interviews. (*Id.* at 253-54.) The trial court made a sufficient inquiry, and did not violate

7    Petitioner's Sixth Amendment rights by denying his request for new counsel.

8        *Bradley* and *Torres-Rodriguez*, the two cases Petitioner cites, do not dictate a different

9    result. In *Bradley*, the Ninth Circuit granted habeas relief to the petitioner based on the violation

10    of her Sixth Amendment rights. 510 F.3d at 1098-99. A full year before the trial, the judge held a

11    conference in his chambers that included, among others, the prosecuting attorney, the petitioner's

12    retained counsel, Ms. Dunlevy, and two attorneys who had no apparent connection with the case,

13    Mr. Andrian and Mr. Gallenson. *Id.* at 1095. The petitioner was not present. *Id.* Among other

14    things, the conference addressed Ms. Dunlevy's desire to withdraw because of serious conflicts

15    with her client, including inadequate payment for defense services. *Id.* The trial judge had

16    apparently known of Ms. Dunlevy's desire to withdraw and had approached Mr. Andrian and

17    Mr. Gallenson about being appointed to represent the petitioner. *Id.* The judge agreed to let Ms.

18    Dunlevy withdraw and to appoint Mr. Andrian in her place. *Id.* By order of the judge, the record

19    of what happened during the conference was sealed until the conclusion of the trial. *Id.*

20        The conference participants then moved to open court, where they were joined by the

21    petitioner and Mr. Hutchinson, a lawyer she had chosen to represent her. *Id.* at 1096. The judge

22    accepted Ms. Dunlevy's motion to withdraw and appointed Mr. Andrian in her place. *Id.* Ms.

23

1   Dunlevy told the court that the petitioner would like Mr. Hutchinson to speak on her behalf, but

2   the court upheld the prosecutor's objection. *Id.*

3          Approximately five months before trial, the petitioner moved to replace Mr. Andrian

4   because they had a conflict, but the new judge denied the request. *Id.* Approximately two months

5   before trial, the petitioner moved to substitute retained counsel, Mr. Jordan, for Mr. Andrian. *Id.*

6   The judge expressed concern about delays and the payment to Mr. Jordan. *Id.* Mr. Jordan assured

7   the judge that he would be ready by the scheduled trial date and was satisfied as to the

8   arrangements for his compensation. *Id.* Nevertheless, the judge denied the motion to substitute

9   counsel. *Id.*

10          The Ninth Circuit summarized its conclusion that the trial court unreasonably denied the

11   petitioner's request to change counsel:

12          The in-camera hearing without petitioner present denied her right to the assistance
           of counsel, an error confirmed and compounded by the court's refusal to let
13          petitioner address the issue in open court. The harmful sequel to this first error of
           constitutional magnitude was the court's constitutional error in refusing to replace
14          Andrian when the attorney-client relationship between him and petitioner had
           broken down. This error led to the third denial of the right to assistance of
15          counsel: the court's refusal to have Andrian be replaced or assisted by Jordan,
           with the resultant injury to the petitioner's defense at trial.

16   *Id.* at 1098-99. With respect to the initial substitution of Mr. Andrian for Ms. Dunlevy, the Ninth

17   Circuit emphasized that the petitioner was given no chance to contest the conclusion that she

18   could not pay for retained counsel: "Due process does not permit a judge to decide such a

19   question without hearing the affected party." *Id.* at 1098.

20          Petitioner here seizes on this language to argue that the trial court violated his Sixth

21   Amendment rights because it did not inquire into his ability to pay for private counsel. (Dkt. # 33

22   at 8.) But *Bradley* is materially distinguishable. First, the trial judge in *Bradley* decided the

23   substitution of counsel issue at an in-camera hearing without the petitioner present, and when he

REPORT AND RECOMMENDATION - 17

1   issued his ruling in open court, he denied the petitioner an opportunity to speak through her

2   chosen representative. Here, Petitioner had two opportunities to address the court and put his

3   concerns on the record. Second, in *Bradley*, Mr. Hutchinson and Mr. Jordan were both present in

4   court when the substitution of counsel issue was raised, whereas Petitioner never arranged for his

5   desired counsel to be present. And third, unlike in *Bradley*, where there would have been no

6   delay to the trial as a result of allowing retained counsel to represent the petitioner, granting

7   Petitioner's request for new counsel would have delayed voir dire and likely the rest of trial. For

8   these reasons, *Bradley* does not compel the conclusion that the trial court's failure to inquire into

9   Petitioner's ability to pay for retained counsel violated his Sixth Amendment rights.

10          *Torres-Rodriguez* also is distinguishable. Petitioner cites *Torres-Rodriguez* for the

11  proposition that a defendant's right to choice of counsel is violated when the court makes

12  "absolutely no inquiry" into the defendant's substitution request. (Dkt. # 33 at 8 (quoting *Torres-*

13  *Rodriguez*, 930 F.3d at 1381).) In *Torres-Rodriguez*, the defendant asked to substitute counsel at

14  the beginning of trial. 930 F.2d at 1381. Unlike cases where it was apparent that the substitution

15  would delay proceedings, the court found that it had "no certain means of establishing the

16  likelihood of delay":

17          Mr. Palacios, Torres' counsel of choice, was present in the courtroom and
            identified himself as Torres' counsel. We have no way of knowing what, if any,
18          familiarity he had with the case. If Mr. Palacios intended to ask for a continuance,
            he was not given the opportunity. Neither Torres nor any of the counsel was
19          permitted to explain the need for substitution. Nor were any attempts made to
            ascertain whether there was any means, perhaps involving the cooperation of
20          Torres' appointed counsel, of permitting the substitution without causing delay.

21  *Id.* The Ninth Circuit acknowledged that if the likelihood of delay were the only factor, it may

22  well rule against the defendant; however, it also found that the trial court did not permit any

23

1    showing regarding the nature of the defendant's complaint with his appointed counsel or the

2    degree to which the dispute with his attorney may have prevented an effective defense. *Id.*

3            Although the trial court in the instant case did not ask whether Petitioner had retained

4    counsel or could afford private counsel, the record is much more robust than in *Torres-*

5    *Rodriguez.* As noted, Petitioner did not arrange for retained counsel to be present at the hearing,

6    and therefore granting his request for new counsel necessarily would have delayed voir dire and

7    very likely the rest of the trial. In addition, the trial court gave Petitioner an opportunity to

8    explain why he was dissatisfied with his counsel, and "[Petitioner] did not allege a complete

9    communication breakdown or an irreconcilable conflict." (Dkt. # 32-1 at 23.) Thus, the factors

10   that drove the court's decision *Torres-Rodriguez* are not present here.

11           In sum, the trial court did not violate Petitioner's Sixth Amendment rights by denying his

12   request for new counsel on the eve of trial. Ground 2 should be DENIED.

13           **C.        Evidentiary hearing**

14           Petitioner asks the Court to hold an evidentiary hearing because there are disputed issues

15   of fact regarding whether he or his family had retained or identified private counsel to represent

16   him. (Dkt. # 33 at 10.) According to Petitioner, if these factual allegations are resolved in his

17   favor, he will be entitled to habeas relief. (*Id.*)

18           The decision to grant an evidentiary hearing lies within the discretion of the federal court.

19   *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). The Court "must consider whether such a

20   hearing could enable an applicant to prove the petition's factual allegations, which, if true, would

21   entitle the applicant to federal habeas relief." *Id.* at 474 (cited source omitted). As discussed

22   above, even if Petitioner had retained private counsel, such counsel was not present on April 3,

23   2012, and therefore granting Petitioner's request for new counsel on the day of voir dire would

have delayed the proceedings. Under these circumstances, the trial court did not violate Petitioner's Sixth Amendment rights by denying his request for new counsel. Because Petitioner has not alleged facts that would entitled him to habeas relief, his request for an evidentiary hearing should be DENIED.

## V.    CERTIFICATE OF APPEALABILITY

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability from a district or circuit judge. A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, the Court concludes that a certificate of appealability should be GRANTED as to Ground 2 (denial of right to retained counsel of choice) and DENIED in all other respects.

## VI.    CONCLUSION

The Court recommends Petitioner's habeas petition be DENIED without an evidentiary hearing and this action be DISMISSED with prejudice. The Court further recommends that a certificate of appealability be GRANTED as to Ground 2 (denial of right to retained counsel of choice) and DENIED in all other respects. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **fourteen (14)** days after the filing of this

REPORT AND RECOMMENDATION - 20

Report and Recommendation. Objections, and any response, shall not exceed three pages. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar **fourteen (14)** days after they are served and filed. Responses to objections, if any, shall be filed no later than **fourteen (14)** days after service and filing of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on the date that objections were due.

Dated this 18th day of June, 2019.

MICHELLE L. PETERSON
United States Magistrate Judge

REPORT AND RECOMMENDATION - 21